Law Offices

**GOLDSTEIN & WEINSTEIN**
**888 GRAND CONCOURSE**
**BRONX, NEW YORK 10451**

DAVID J. GOLDSTEIN                                                              TEL: (718) 665-9000
BARRY A. WEINSTEIN                                                              FAX: (718) 665-9147

May 8, 2008

**BY HAND AND ECF FILING**

Honorable Richard J. Holwell
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

          Re:    United States v. Eddy Paulino
                  Docket No. 07 Cr. 486-01 (RJH)

Dear Judge Holwell:

      I write this letter to set forth the defendant's comments upon the Pre-sentence report (hereinafter "PSR"), and to provide additional information concerning Mr. Paulino. For all of the reasons set forth hereinafter, we most respectfully request that the defendant be sentenced to a sentence outside (below) the guideline range of 70 to 87 months. We believe that such a non guideline sentence, is reasonable and appropriate in this case.

      With the recent decision of the United States Supreme Court, in *Booker/Fanfan,* invalidating the Sentencing Guidelines as a mandatory sentencing scheme, as well as the decision of the Second Circuit in *United States v. Crosby,* 397 F. 3d 103 (2d Cir. 2005), this Court now has the discretion to impose any sentence it deems appropriate in this case. There is no statutory mandatory minimum sentence required here, and the only limitation upon the Court's sentencing discretion is that the sentence must be reasonable. The *Booker/Fanfan, Crosby* decisions refer the Court to Title 18 U.S.C. §3553(a), for a list of factors to be considered in making that determination.

**A. The defendant's background**

      Mr. Paulino is a 33 year old native of the Dominican Republic. He is a lawful permanent resident in the United States since 2004. He married his wife, Lourdes Paulino de Salazar on December 16, 2001, in Yonkers, New York. (PSR ¶ "35"). They have two children, Jayco, age 5, and Jayriel, 9 months (PSR ¶ "36.").

      On April 18, 2008, Mr. Paulino voluntarily surrendered to the United States Marshals at 500 Pearl Street to commence the service of his sentence. Until that date he had been a full time

Honorable Richard J. Holwell
May 8, 2008
page - 2-

employee, earning $575 a week, driving a school bus for All County Bus. (PSR ¶ "49"). He has been steadily employed since entering the United States (PSR, ¶ "50" and "51"). He has filed income tax returns for the years 2003, 2004, 2005, and 2006. (PSR ¶ 57).

### B. The defendant's role in the offense, and his efforts at cooperation

On June 27, 2006, Mr. Paulino was standing in front of his home at 103 West 183rd Street, Bronx New York, when he was approached by several police officers. The defendant was carrying two bags, each of which contained a quantity of United States currency. The police then entered the defendant's home pursuant to the defendant's consent, where the defendant gave them an additional quantity of money. The defendant was then taken to the 46th police precinct in the Bronx. At the precinct, he told the police officers that he was paid to receive and deliver money. He told the police that a man called "Compa" would call him from the Dominican Republic to arrange the delivery. "Compa", whose real name is Giovanni, is the defendant's ex brother-in-law. After being at the precinct for approximately six hours, the police confiscated the money, and released the defendant.

For the next almost 8 months, the defendant went to work each day driving his school bus. In the beginning of February, 2007, police officers came to the defendant's home. They came equipped with a tape recorder, and asked him if he was willing to cooperate. Even though the target of the agents' efforts was a family member, he agreed to do so. The defendant made repeated calls to the Dominican Republic in an attempt to find "Compa". They were unsuccessful. Mr. Paulino was again released from police custody. Approximately 3 weeks later, on February 28, 2008, the defendant was arrested as he was leaving his job.

### C. Sentencing recommendation

A reasonable sentence is also justified here by the fact that the defendant will obviously be deported after the completion of whatever prison term is imposed by this Court. While deportation of itself does not require the service of an additional prison term, it is an integral part of the punishment. Initially, after completing the service of his sentence, it takes many months, during which the defendant will be incarcerated in county facilities, before actually being deported. This is additional time in jail which will not be credited to the prison term imposed by this Court.

Further, deportation also negates the necessity of punishment for the purpose of individual deterrence. Obviously, when the defendant is deported, he will no longer be at liberty in this country to commit any future crimes, assuming he had the intention of doing so.

The most significant effect of deportation will be the loss of the defendant's family. His two (2) children were all born in this country and are American citizens. They have no intention of

Honorable Richard J. Holwell
May 8, 2008
page -3-

joining the defendant in the Dominican Republic after he is released from prison and deported to that country. The only country his children know is this country, and there is no doubt that they will remain here.

    For all of the foregoing reasons, a sentence of 36 months seems reasonable and appropriate.

    Thank you for your consideration.

                                        Respectfully yours,

                                        Barry A. Weinstein

cc:    AUSA Sarah Lai
       by facsimile

       USPO Amy L. Greenberg
       by facsimile